UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA B. STRONG,

    Plaintiff,

v.                                           Case No: 8:16-cv-1757-T-36JSS

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO COMPEL

THIS MATTER is before the Court on Defendant's Motion to Compel Response to Questions Asked at Deposition ("Motion") (Dkt. 23) and Plaintiff's Opposition to Defendant's Motion to Compel (Dkt. 28). Upon consideration, the Motion is granted.

## BACKGROUND

On February 19, 2016, Plaintiff Patricia Strong filed a Complaint against Defendant GEICO General Insurance Company, alleging bad faith against Defendant in its handling of the underinsured and uninsured motorist claims arising from two motor vehicle accidents on January 24, 2011, and April 19, 2012. (Dkt. 2.) Plaintiff filed this action after the underlying suit, *Patricia B. Strong v. GEICO General Insurance Company*, Case No. 13-007487-Cl, filed in the Circuit Court of the Sixth Judicial Circuit in Pinellas County, Florida ("underlying action"), resulted in settlement of both the January 24, 2011, and April 19, 2012, claims. (Dkt. 2 at 1-2.) During the underlying action, the parties attended mediation on April 30, 2013, and February 24, 2014, but reached an impasse on both occasions. (Dkt. 2 at 2.) Plaintiff now claims that Defendant acted in bad faith by failing to settle within the available policy limits earlier when it "could have or should have done so" and failing to initiate and conduct settlement negotiations in good faith. (Dkt. 2 at

¶¶ 43, 50.) Plaintiff also alleges that Defendant acted in bad faith because it "offered zero dollars to settle [the underlying action] before the Civil Remedy Notice was sent on May 24, 2013," and "made no offer to settle [the underlying action] on or before July 25, 2013." (Dkt. 2 at ¶¶ 32, 36.)

On January 6, 2017, Defendant took Plaintiff's deposition in this case. (Dkt. 23-1.) During the deposition, Plaintiff was asked questions regarding whether Defendant made an offer at mediation in the underlying action. (Dkt. 23-1 at 14-15.) Plaintiff's attorney instructed Plaintiff not to answer, citing the mediation privilege provided in Section 44.405 of the Florida Statutes. (Dkt. 23-1 at 14-15.) Plaintiff's attorney in the underlying action, Paul Castagliola, was deposed on January 9, 2017. (Dkt. 23-2.) Similarly, Castagliola refused to answer questions regarding any offers Defendant made at mediation in the underlying action on the basis of the mediation privilege. (Dkt. 23-2 at 16, 19.)

Defendant filed its Motion requesting the Court compel Plaintiff and Castagliola to answer Defendant's questions regarding whether Defendant made offers to settle at mediation in the underlying action and the amount of those offers. (Dkt. 23 at 2.) Defendant contends that Plaintiff has injected into this case the issue of settlement offers made during the underlying action by the very nature of her claim, and, therefore, whether Defendant made settlement offers during mediation is relevant to Plaintiff's case. (Dkt. 23 at 3.) Defendant further contends that the "sword and shield doctrine" precludes Plaintiff from benefitting from the mediation privilege while hindering Defendant's ability to present a full defense against the bad faith allegations. (Dkt. 23 at 3.) In her response, Plaintiff argues that Defendant did not tender a written offer to settle in the underlying action from the time of the original demand in January 2013 through the filing of the complaint in September 2013. (Dkt. 28 at 2.) Plaintiff also argues that nothing in Section 44.405 of the Florida Statutes compels either party to waive the confidentiality of mediation when an

impasse occurs and the public policy interests related to the mediation privilege, encouraging parties to use open dialogue during in mediation, outweighs any Defendant's interests in proving that an offer was made. (Dkt. 28 at 2.)

## APPLICABLE STANDARDS

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

When a court's jurisdiction is based on diversity of citizenship as is the case here (Dkt. 1), substantive matters are governed by state law. *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 112 (1945) ("The source of substantive rights enforced by a federal court under diversity jurisdiction, it cannot be said too often, is the law of the States."); *Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result."); *Bradford v. Bruno's, Inc.*, 94 F.3d 621, 622 (11th Cir. 1996) ("Only state law of a substantive, as opposed to procedural, nature is applicable in diversity cases."). Accordingly, in diversity actions, determining the "the privileged nature of material sought in discovery" is controlled by state law. *Somer v. Johnson*, 704 F.2d 1473, 1478 (11th Cir. 1983). Therefore, Florida law applies in determining whether offers of settlement made during mediation are protected from discovery by the mediation privilege.

The mediation privilege is codified in Section 44.405 of the Florida Statutes. Section 44.405 expressly states:

> (1) Except as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel. A violation of this section may be remedied as provided by s. 44.406. If the mediation is court ordered, a violation of this section may also subject the mediation participant to sanctions by the court, including, but not limited to, costs, attorney's fees, and mediator's fees.
>
> (2) A mediation party has a privilege to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications.

§ 44.405, Fla. Stat. The party asserting the mediation privilege bears the burden of demonstrating that the communication from the mediation is protected. *RSUI Indem. Co. v. Desai*, No. 8:13-CV-2629-T-30TGW, 2016 WL 7013534, at *4 (M.D. Fla. Nov. 8, 2016), *report and recommendation adopted*, No. 8:13-CV-2629-T-30TGW, 2016 WL 6947372 (M.D. Fla. Nov. 28, 2016).

## ANALYSIS

Because the Plaintiff is asserting the mediation privilege, she bears the burden of demonstrating that any offers made by Defendant during mediation are protected from discovery. *Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1256 (M.D. Fla. 2014).

### A.  Mediation Participants

With regard to the questions posed at deposition, Plaintiff and Castagliola cannot assert the mediation privilege against Defendant because Defendant was a participant in the mediations in the underlying action. Florida's mediation privilege statute provides that "[a]ll mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel." § 44.405(1), Fla. Stat. A "mediation communication" is defined as "an oral or written statement…by or to a mediation participant made during the course of a mediation, or prior to mediation if made in furtherance of a mediation." § 44.403(1), Fla. Stat. A "mediation participant"

is defined as "a mediation party or a person who attends a mediation in person or by telephone, videoconference, or other electronic means." § 44.403(2), Fla. Stat.  And, finally, a "mediation party" is defined in relevant part as "a person participating directly, or through a designated representative, in a mediation and a person who: (a) is a named party; [or] (b) is a real party in interest ...." § 44.403(3), Fla. Stat.

Thus, the mediation privilege in Section 44.405(1) protects disclosure of communications that were made during mediation from those who were not participants in the mediation process. As Plaintiff admits, the underlying mediations involved "the very same parties" as Plaintiff's case. (Dkt. 28 at 6.)  Plaintiff and Castagliola cannot assert the mediation privilege against Defendant because both Plaintiff and Defendant were participants to the mediations in the underlying action, and Castagliola was Plaintiff's counsel. *See Altheim v. GEICO General Insurance Co.*, No. 8:10-CV-156-T-24TBM, 2010 WL 5092721 (M.D. Fla. Dec. 8, 2010) (finding the mediation privilege inapplicable and requiring disclosure where both parties were participants in the underlying mediation).  Therefore, Plaintiff and Castagliola must provide answers to Defendant's inquiries regarding the mediations in the underlying action, including whether Defendant made offers to settle and the amount of those offers. *James Gorman Ins., Inc. v. Bankers Ins. Co.*, No. 8:16-CV-816-T-27AEP, 2016 WL 3959337, at *2 (M.D. Fla. July 22, 2016) ("Because Plaintiffs and Defendants were mediation participants it does not appear that the mediation privilege would be applicable."); *Bowdler v. State Farm Mut. Auto. Ins. Co.*, No. 2:13-CV-539-FTM-38, 2014 WL 2700672, at *2-3 (M.D. Fla. June 13, 2014) (finding activity logs containing summaries and analyses of communications during the underlying mediation fell outside the mediation privilege because both plaintiff and defendant participated in the mediation); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 626-27 (S.D. Fla. 2013) (declining to extend the

mediation privilege to plaintiff's documents from a mediation with defendant in a previously litigated case because "the prohibition on disclosure of mediation communications does not apply among participants to the mediation").

### B. Sword and Shield Doctrine

In its Motion, Defendant also maintains that the discovery at issue is needed for its defense of the case as evidence concerning settlement offers may be used at trial, and Defendant seeks clarity on the issue in preparation for trial. (Dkt. 23 at 4.) Defendant argues that whether it made settlement offers during mediation is at the heart of this litigation because Plaintiff alleges that Defendant failed to make settlement offers in the underlying action, and prohibiting Defendant from presenting such evidence would prevent it from effectively defending itself. (Dkt. 23 at 13-14.) Defendant further contends that Plaintiff cannot hide behind the mediation privilege as a shield while simultaneously using it as a sword against Defendant. (Dkt. 23 at 14.)

In response, Plaintiff argues that the verbal communication at mediation "is absolutely privileged by Florida Statute" and that Defendant "should have known that its good faith efforts to settle [Plaintiff's] claims would be an issue if a bad faith claim was later asserted." (Dkt. 28 at 7-8.) Plaintiff further argues that Defendant's "sword and shield doctrine" argument fails because Defendant never confirmed the dollar amount of any alleged offer post-mediation, even after Plaintiff filed a civil remedies notice. (Dkt. 28 at 8-9.)

"Under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged." *Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010) (citing *GAB Bus. Servs., Inc. v. Syndicate*, 627, 809 F.2d 755, 762 (11th Cir. 1987)). Courts have applied the sword and shield doctrine to preclude the assertion of the mediation privilege. *Bradfield*, 15 F. Supp. 3d

at 1256-57 (finding plaintiff's assertion of the mediation privilege barred by the sword and shield doctrine where plaintiff's claim depended upon the reasonableness of the mediation agreement); *Gonzalez v. GEICO General Ins. Co.*, No. 8:15-cv-240-T-30TBM (M.D. Fla. May 18, 2016) (stating the sword and shield doctrine would preclude a party from benefitting from the mediation privilege while simultaneously preventing an opposing party from using settlement offers as evidence in a bad faith action).

Here, Plaintiff alleges in the Complaint that Defendant acted in bad faith by failing to settle within the available policy limits when it "could have or should have done so" and failed to initiate and conduct settlement negotiations in good faith.  (Dkt. 2 at ¶¶ 43, 50.)  Plaintiff also alleges that Defendant acted in bad faith because it "offered zero dollars to settle [the underlying action] before the Civil Remedy Notice was sent on May 24, 2013," and "made no offer to settle [the underlying action] on or before July 25, 2013."  (Dkt. 2 at ¶¶ 32, 36.)   Despite these allegations, Plaintiff insists any information regarding settlement offers made during the April 30, 2013, and February 24, 2014, mediations in the underlying action is privileged.

Plaintiff cannot hide behind the shield of privilege to prevent Defendant from effectively challenging Plaintiff's evidence and allegations.  *See Savino v. Luciano*, 92 So. 2d 817, 819 (Fla. 1957) (finding that a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matters into evidence, and then attempts to raise the privilege, may be deemed to have waived that privilege).  Plaintiff has asserted claims in the Complaint that specifically relate to Defendant's settlement offers, or lack thereof.  As such, the proof of the Plaintiff's claims and Defendant's defense of those claims will necessitate the introduction of evidence concerning any settlement offers.  Thus, the sword and shield doctrine applies here, and allowing Plaintiff to assert that the mediation privilege applies to settlement

offers made during mediation in the underlying action would hinder Defendant's ability to present a full defense against Plaintiff's bad faith allegations.

In a similar case, *Gonzalez v. GEICO General Ins. Co.*, No. 8:15-cv-240-T-30TBM (M.D. Fla. May 18, 2016), the court applied the sword and shield doctrine to prevent the assertion of the mediation privilege. In *Gonzalez*, a non-party involved in mediation of the underlying case moved to strike portions of the defendant's motion for summary judgment that contained references to settlement offers made by the defendant during mediation. The non-party argued that the information was protected under the mediation privilege. The court denied the motion, reasoning in part that if the assertion of the mediation privilege were upheld, it "would hinder [the defendant's] ability to present a full defense against the bad faith allegations." *Id*. at 7.

Plaintiff argues that *Gonzalez* is distinguishable because the "person seeking to protect mediation communications was not an opposing party to [the defendant] in the bad faith case." (Dkt. 28 at 7.) However, the *Gonzalez* decision explicitly addressed this issue, stating that if the party claiming the mediation privilege were a party to the bad faith action, "it would appear that the so-called 'sword and shield doctrine' would preclude her from benefitting from the mediation privilege by preventing [defendant's] use in evidence of the settlement offers." *Gonzalez*, No. 8:15-cv-240-T-30TBM at 7. Likewise, here, Plaintiff cannot benefit from the mediation privilege by preventing Defendant's use of the evidence of settlement offers.

Plaintiff also maintains that the "public policy interests in encouraging parties to use open and frank dialogue when participating in mediation that might not be used without the protection of the mediation privilege override any interests of one party or another in trying to prove that an offer was made." (Dkt. 28 at 2.) However, Plaintiff offers no support for this argument and, as demonstrated above, courts have found that the mediation privilege did not apply in cases similar

to Plaintiff's case.  *See Bowdler*, No. 2:13-CV-539-FTM-38, 2014 WL 2700672, at *4 ("Defendant's bald assertion that compelling production of the [activity logs from mediation] will contravene public policy and 'result in a chilling effect on the ability of litigants to openly discuss dispute resolution during mediation, and negatively impact the mediation process' is unpersuasive without more.").  Accordingly, it is

**ORDERED** that Defendant's Motion to Compel Response to Questions Asked at Deposition (Dkt. 23) is **GRANTED**.

**DONE** and **ORDERED** in Tampa, Florida, on March 15, 2017.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record